

U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

---

Rod J. Rosenstein
United States Attorney

P. Michael Cunningham
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4884
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
michael.cunninghamg@usdoj.gov

FILED ___ ENTERED
___ LODGED ___ RECEIVED

MAY 0 6 2011

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

March 4, 2011

<u>Via Email</u>

Jack Rubin, Esquire
Flynn M. Owens, Esquire
200 East Lexington Street
Suite 1300
Baltimore, Maryland 21202

      Re:   United States v. Paul Mark Karpa
             Criminal No. RDB-11-0152

Dear Messrs. Rubin and Owens:

     This letter, along with the sealed supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 18, 2011, it will be deemed withdrawn. **The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** The terms of the agreement are as follows:

Offenses of Conviction

     1.    The Defendant agrees to waive indictment and plead guilty to a Criminal Information which will charge him with one count of Possession of Child Pornography pursuant to 18 U.S.C. § 2252(a)(4)(B) and § 2256. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offenses

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### COUNT ONE

That on or about April 9, 2010, in the District of Maryland,

    a. The Defendant knowingly possessed or accessed with intent to view any visual depiction; and

    b. The visual depiction had been shipped or transported using any means or facility of interstate or foreign commerce; and/or

    c. Was producing using materials which have been mailed or shipped or transported using any means or facility of interstate or foreign commerce, including by computer; and

    d. The production of the visual depiction involved the use of a minor engaging in sexually explicit conduct; and

    e. The visual depiction was of such conduct.

### Penalties

3. a. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 10 years' imprisonment, lifetime supervised release, and a $250,000 fine. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

b. The Defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender, and to keep that registration current, in the place where he resides, where he is employed, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may violate the terms of his supervised release and subject him to new criminal charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

e. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

f. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

3

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth at Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a. Pursuant to § 2G2.2(a)(1) of the United States Sentencing Guidelines, the base offense level is 18.

b. Pursuant to U.S.S.G. § 2G2.2(b)(2), the offense level is increased by 2 levels to a level 20 because the material involved images of prepubescent minors who had not attained the age of 12 years.

c. Pursuant to U.S.S.G. § 2G2.2(b)(6), the offense level is increased by 2 levels to a level 22 because the offense involved the use of a computer for the possession of the material.

d. Pursuant to U.S.S.G. § 2G2.2(b)(7)(A), the offense level is increased by 3 levels to a level 25 because the offense involved between approximately 150 and 300 images of child pornography. The final base offense level is therefore 25.

4

e. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The parties agree that a three-level reduction for acceptance of responsibility would result in an adjusted offense level of 22.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history category could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, or adjustments set forth in Chapters 2, 3, 4, and 5 of the United States Sentencing Guidelines will be raised or are in dispute.

9. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character, and conduct, including any charged and uncharged conduct related to the investigation as well as any images seized during the investigation of any charged and uncharged conduct.

## Rule 11(c)(1)(C) Plea

10. The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence of **forty-one (41)** months imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

### Restitution

11. The Defendant agrees that, pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 2259, the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Forfeiture

12. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on April 9, 2010. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (I) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 41 months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 41 months' imprisonment.

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

15. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

16. This agreement supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
P. Michael Cunningham
Assistant United States Attorney

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3/18/11
Date

_____
Paul Mark Karpa

We are Paul Mark Karpa's attorneys. We have carefully reviewed every part of this agreement with him. He advises us that he understands and accepts its terms. To our knowledge, his decision to enter into this agreement is an informed and voluntary one.

3-18-11
Date

_____
Jack Rubin, Esquire
Flynn M. Owens, Esquire

8

# EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Paul Mark Karpa, age 53, is currently a resident of Odenton, Maryland.

Mr. Karpa used a laptop provided to him by his employer, a local Baltimore, Maryland financial firm, to access, view and possess child pornography while at his residence in Odenton, Maryland. This was discovered by a representative of this local Baltimore financial firm when the firm was notified of a virus alert coming from a company laptop which was used by Mr. Karpa on January 6, 2010. The firm's enterprise security team discovered the virus was coming from an external hard drive plugged into the laptop. The firm's enterprise security team ran a remote script to remotely inspect the laptop over the firm's network in an attempt to identify additional information on the virus. In doing so, a directory list of files from the external hard drive was discovered. There were approximately 47,000 files on this external hard drive and at least 354 directories. The enterprise security team was unable to view any images, but were able to see the directory names. The file names include: "AAA 13 yr incest brother and two sisters – Preteen Underage Incest Lolita Daddy Fucks 12yr Old Daughter.mpg", "AAA pedo – Vicky Compilation (pthc kiddy child)(14m58s).mpg", "Best 2 underage lolitas play with whips and a young boy toy joins in (r@ygold reelkiddymov pedo underage ill.mpg", and "child porn 10 yr preteen Lolita pretten young incset kiddie porno sex.mpeg".

On January 8, 2010, at 10:15 a.m., the firm's enterprise security team took possession of Mr. Karpa's company-issued laptop. Upon taking possession of this laptop, a further review of the laptop occurred. Some of the images on the laptop constitute child pornography as defined under 18 U.S.C. Section 2256. Specifically, under the folder "News," there is an image entitled "25-1.jpg", which is an image of a naked prepubescent female exposing her genitalia sitting on a bed with her legs underneath her; Image "26-1.jpg" is an image of a naked prepubescent female with her arms crossed on her waist, one leg underneath her, and one leg bent exposing her genitalia; and Image "DSC_142x.jpg" is an image of a naked prepubescent female wearing black leggings and white high-heel shoes, kneeling with her legs spread apart and her hand placed on her genitalia region holding what appears to be a long blue object.

On March 26, 2010, the firm's enterprise security team noted that a virus alert was coming from a new laptop assigned to Mr. Karpa. The file path of the alert was e:\J Drive\mov14yo girl and 12yoboygettingatit.mpg.exe. Because of the location of the file, the firm's enterprise security team believed the file came from a removable media device that was placed onto the laptop being utilized by Mr. Karpa. According to the firm's enterprise security team, once Mr. Karpa's computer accessed

the company's network, the alert was generated. On March 26, 2010, Mr. Karpa was in Colorado on a business-related trip.

On April 9, 2010, FBI agents executed a search at Mr. Karpa's residence and office. Approximately 100 videos and other images of child pornography, some of which the National Center for Missing and Exploited Children advised were of "known" child victims, were recovered. A number of these videos depicted pre-pubescent children.

The computer(s) used to obtain and hold the above-referenced images was made outside the State of Maryland. Certain of the victims depicted in the "known" images were abused outside the State of Maryland.

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

3/18/11
Date

Paul Mark Karpa

We are Paul Mark Karpa's attorneys. We have carefully reviewed every part of this Statement of Facts with him. To our knowledge, his decision to sign it is a voluntary one.

3-18-11
Date

Jack Rubin, Esquire
Flynn M. Owens, Esquire

11